# Susquehanna Mutual Fire Ins. Co. *versus* Staats.

1. Where a purchaser at sheriff's sale, subsequent to the purchase, but prior to the acknowledgment of the sheriff's deed, procured a policy of fire insurance on said property, and in his application for the policy stated that the title to the property was "owned by applicant:" *Held*, that there was no such absence of title in the assured as to cause the statement to invalidate the policy.

2. An honest representation of the value of the property to be insured, although somewhat in excess of its true valuation, will not invalidate a policy of fire insurance, notwithstanding a provision that "any overvaluation of the property or interest to be insured shall render absolutely void any policy issued upon such description or valuation."

3. Where a policy of fire insurance required formal proofs to be furnished within thirty days, and the evidence disclosed that the secretary of the insuring company, after receiving an informal notice from the assured of the total destruction of the building, went to the site of the risk, viewed the ruins, obtained a carpenter's estimate for rebuilding, offered the insured a specific sum for his loss, marked certain items in an inventory of the destroyed personal property as articles for which his company was willing to pay, and entered into an agreement with the agent of another insurance company as to their respective proportions of the loss:

*Held*, that there was sufficient evidence to submit to the jury of a waiver by the insurer of formal proofs.


March 6th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Peas of *Northampton county :* Of July Term 1882, No. 201.

Covenant, by John H. Staats against the Susquehanna Mutual Fire Insurance Company, on a policy of fire insurance to recover

6  OUTERBRIDGE.—34

[Susquehanna Mutual Fire Ins. Co. *v.* Staats.]

damages for loss sustained by plaintiff in the destruction of the insured property by fire. Pleas, *non est factum*, covenants performed, with leave, etc.

On the trial, before MYERS, P. J., the following facts appeared:—On September 22nd 1876, the plaintiff bought the insured property at a sheriff's sale upon a mortgage held by him. A few days after this purchase, and prior to the acknowledgment of .the sheriff's deed, he applied to the defendant company for a policy of insurance on said property. In his application he was asked : · "State the nature of your title, whether fee simple, leasehold or by bond and agreement," to which he answered : " Owned by applicant." Also, " What is the actual cash value of the property to be insured ? Answer. $8,000." By the conditions of the contract of insurance the above representations were taken as warranties. The company's agent indorsed on the application that he was personally acquainted with the applicant and the risk, and advised the acceptance of the latter.

, On October 3rd 1876, the defendant issued a policy of fire insurance to the plaintiff for $3,000, of which $300 was upon personal property and the balance upon the said real estate. The sheriff's deed to the latter was not acknowledged until October 17th 1876.

· The policy of insurance contained, inter alia, the following conditions :

" 1. . . . The applicant shall also state the true cash value of the property to be insured, and the incumbrance (if any) on the same ; also the nature of the interest to be insured, if other than fee simple title and ownership ; also any other facts relating and material to the risk. And the said valuation, description and survey shall be taken and deemed to be the act of the insured, and a warranty on his, her, or their part, and said warranty shall apply to all the property insured, whether real or personal. . . . An over-valuation of the property or interest to be insured, shall render absolutely void any policy issued upon such description or valuation.

" 10. Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the secretary of the company, and within thirty days after said loss shall deliver to the secretary a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property, giving copies of the written portion of all policies thereon, also the actual cash value of the property and their interest therein, for what purpose and by whom the building insured or containing the property insured, and the several parts thereof, were used at the time of the loss

and when and how the fire originated, and the incumbrances, if any. . . .

"And said company shall in no case be deemed to have waived a full, liberal and strict compliance with, and performance of each and every of the terms, provisions, conditions and stipulations in this policy contained, and hereunto annexed to be performed and observed by and on the part of the insured and every person claiming by, through or under them, unless such waiver be express, and manifested in writing, under the signature of the secretary of said company."

The narr. averred that the notice of the loss was duly furnished defendant, as provided by the contract of insurance.

The building insured was totally destroyed by fire on April 16th 1877, and the personal property damaged. On the following day, the plaintiff addressed the following letter to B. K. Huntzinger, the secretary of the Susquehanna Mutual Insurance Company:

"HACKETTSTOWN, April 17th,

"*Dear Sir:* The building insured in your company by Policy (1016) was burned on the evening of the sixteenth inst. Agent of company who gave the policy was P. B. Singer, Portland, Pa.           "Yours, &c.,

"JNO. H. STAATS."

Within a week or ten days after the receipt of this letter, Mr. Huntzinger came to Portland, the seat of the risk, and saw the plaintiff. After viewing the ruins, he obtained a carpenter's estimate as to the cost of rebuilding, and then, in behalf of the company, offered the plaintiff $4,000 for the loss, which the latter would not accept. The plaintiff produced at the same interview a. written list of the articles of personal property which had been destroyed, and Mr. Huntzinger marked upon the paper as "accepted" such as the company would be willing to pay for, and fixed their aggregate value at $269.47. Nothing further was done until May 8th 1877, when Staats offered, by letter of that date, to accept 4,700 for his loss. Two days later, Huntzinger replied that "before we (the insurance company) can go into any further negotiations for settlement we want to know just at what figure you can replace the building destroyed, after having which sum it will be an easy matter to proportion the loss amongst the parties interested." Acting upon this letter, Mr. Staats fixed the 17th of May for a meeting of the insurance companies who had risks upon the building. On that day Huntzinger again visited Portland, with a representative of the Farmers' Insurance Company, and entered into an agreement in writing of that date, by which the cost of rebuilding the insured property

was estimated at $4,600. It was further provided : " This agreement not to affect any rights of either party under existing contracts or in law, excepting only the matter of valuation agreed upon."

On October 10th 1877, the defendant refused to pay, on the ground that no formal proofs of loss had been furnished by the plaintiff, within thirty days, as required by the contract of insurance.

The defendant objected to the admission of testimony tending to establish a parol waiver of the stipulation in the policy, requiring formal proofs of loss to be furnished within thirty days, because (1) the narr. alleged a performance and not a waiver of the condition; and (2) the contract expressly provided that there could be no waiver unless "manifested in writing under the signature of the secretary of the company."

The defendants submitted the following points :

" 3. There can be no waiver of preliminary proofs to bind the company defendant, unless such waiver is express and manifested in writing under the signature of the secretary of the company defendant."

Answer. Not affirmed.

" 4. If there were no preliminary proofs, or waiver thereof as required by law, within thirty days after plaintiff's loss, the policy was forfeited, and could not be reinstated unless it was expressly done by authority of the company or upon a new consideration."

Answer. Not affirmed.

" 6. If there was a waiver as to time within which the preliminary proofs might be furnished, there was no waiver of proof entirely, and the proof never having been made before suit, the plaintiffs cannot recover."

Answer. Not affirmed.

" 8. The answer of the plaintiff in the application that the actual cash value of the property to be insured was $8,000, is an express warranty, and if the jury should find the actual cash value not to exceed $6,000 at the time of insurance, the policy is void, and the plaintiff cannot recover."

Answer. Not affirmed.

" 10. The answer of the plaintiff in his application that he was the owner of the property, was an express warranty, and as he had no absolute title thereto at the time the policy was issued, nor for two weeks thereafter, the said policy became forfeited."

Answer. Not affirmed under the evidence.

" 13. Under the pleadings in this case, there can be no evidence of waiver submitted to the jury, and the verdict must be for the defendant."

[Heller *v.* Hufsmith.]

Answer. Not affirmed.

The court, in its general charge, submitted the question of the alleged waiver to the jury as a matter for their determination.

Verdict for the plaintiff for $2,748.87, and judgment thereon. The defendant thereupon took this writ of error, assigning for error the admission of the testimony, the answers to his points, and the portions of the charge, ut supra.

*Henry W. Scott,* for the plaintiff in error.

*E. J. Fox* and *Robert 1. Jones* (*Elisha Allis* with them), for the defendant in error.

The opinion of the court was filed March 19th 1883.

PER CURIAM. There was no such absence of title in the assured as to cause his statement thereof to affect the validity of the insurance ; nor did an honest representation of the value of the building have that effect, although it was somewhat in excess of the actual value. Besides, the agent of the company who negotiated the insurance certified on the application that he was personally acquainted with the risk.

The notice of loss was on the first day after the fire, and sufficiently specific in form. The subsequent conduct and action of the secretary of the company were amply sufficient to submit to the jury to find a waiver of formal proofs. He was the officer to whom the proof was to be made. He went upon the ground, and agreed with the insured as to the valuation of the loss. We discover no error.

Judgment affirmed.