Pearson, C. J.
 

 We do not concur in the opinion of his that the evidence established such an injury to the land and wrong on the part of the defendant, as will enable tenant in common to maintain an action on the case, in the nature of waste, against his cotenant.
 

 There is a marked distinction in respect of what constitutes waste, in the relation of a remainderman, or reversioner after an estate for life or years, and the particular tenant-, and the relation of tenants in common whe have each an estate of inheritance in possession.
 

 If a tenant in common receives more than his share of the profits, by an
 
 excessive we <of the ‘property,
 
 as by wearing out the land, or by an
 
 improper use of it,
 
 as by cutting down the timber and selling it, he cannot be treated as a tort feasor, but the remedy of the cotenant is -by an action of account, or a bill in Equity for an account’;
 
 Walling
 
 v.
 
 Borroughs,
 
 8 Ired. Eq. 61. Even if he removes a part of the land, as-marl, an action on the case, in the nature of waste, will not lie, although the land is thereby permanently injured, and made of less value;
 
 Smith
 
 v. Sharpe, Bus. Rep. 91.
 

 
 *212
 
 A tenant in common of personal property, cannot bring trover against bis cotenant, unless the thing is destroyed, either actually or in effect, as by removing it to parts unknown. On the same principle, a tenant in common of land, cannot bring an action for waste against his cotenant, or. an action on the case in the nature of waste, which is a substitute for the action of waste, unless there be destruction, so that an action of account, or a bill in Equity for an account, would not be available, because nothing was received, whereof an account could be taken; for instance, where a tenant in common wilfully burns down the houses, or cuts down ornamental shade trees. Indeed, a question may be made:— whether a tenant in common can, even for destruction, maintain an action on the case in the nature of waste, for his right to bring an action of waste, is given by a different statute, than the one which gives the action to a remainderman or reversioner, and the remedy is not by the recovery of damages, but to compel partition, and in the allotment, to have the place wasted, assigned to the lot of the tenant who committed the waste; whereas, the remedy given to a remainderman or reversioner, is to recover the place wasted, and also
 
 damages
 
 for the injury to his fee simple estate. But we will not enter into this subject, because the point is not presented by the case under consideration, for there is no evidence of destruction or irreparable injury, which could not be charged to the defendant in stating an account for what he had received over and above his share of the profits. It is true the case sets out “it was proved that a permanent and irreparable injury had been done to the land,” but this is explained by other parts of the case, and the amount of it is, that the defendant had cleared all of the tract of land, which was fit for cultivation, and had, by successive crops, worn it out, so as to leave no timber for fencing, and no soil on the land, whereby its value, either for sale or use, was much depreciated. Suppose all of this to be true, it is only an excessive or improper use of the land, whereby the defendant is liable to be charged in account for the larger amount of profits which he has, or
 
 *213
 
 ought to have received; but it does not amount to what the law understands to be destruction, or irreparable injury, which cannot be compensated for in money, for, at most, it would only subject the defendant to a charge for the full value of the land, as if he had not made this excessive use of it, or to an'extra charge for profits which he ought to have received by reason of such excessive use, supposing it to have been excessive; for, under certain circumstances, a “prudent proprietor,” who owns a body of rich land, will clear every foot of it, and put it in cultivation and depend on getting rail timber and fire wood from the ridges, if it be in the mountain country, or from the swamps, if it be in the low country. And it would be considered bad management, if an owner of river bottoms, in the western portion of our State, or of upland, cry enough for cultivation, in the eastern portion, should let it remain uncleared merely for the sake of the wood; at all events, clearing and cultivating it, would not be considered destruction, or such an injury as could be deemed irreparable, and for which damages would not be ample compensation, provided he was able to pay.
 

 Per Curiam,
 

 -Judgment reversed and a
 
 venire de novo.