27 271
29 661

[No. 4022.   Decided January 10, 1902.]

CEDAR CANYON CONSOLIDATED MINING COMPANY, *Appellant*, v. W. J. YARWOOD *et al., Appellants.*

MINES AND MINERALS — MINING CLAIM — RIGHT OF OWNER TO FOLLOW VEIN UNDER OTHER CLAIMS.

The holder of a valid mining location within which a vein or lode apexes is the owner of the whole of the vein, and he has the right to follow its dip and angles for the purpose of mining when it dips under and leads without the side lines of his claim as marked and located upon the surface.

SAME — PURCHASE OF ADJOINING CLAIM BY ONE JOINT OWNER — RIGHTS OF CO-TENANTS.

Where an interest in a mining claim is purchased by one of the tenants in common of an adjoining claim for the purpose of benefiting and protecting the common property, such purchased interest inures to the joint benefit of all the co-tenants.

SAME — CO-TENANCY IN MINING CLAIM — WHEN VALID.

Where a valid mining location has been perfected by locators, good as between themselves and the government, unless a better title could be shown by a third person, such mineral claim constitutes property to which a co-tenancy would attach, and joint claimants therein sustain to one another the relation of co-tenants.

SAME — ESTOPPEL OF CO-TENANT.

The fact that no discovery of mineral had been made upon a mining claim at the time of its location, could not be questioned by one co-tenant in a contest between himself and his co-tenants.

SAME — RIGHT OF CO-TENANT TO PARTICIPATE IN INVESTMENT — WAIVER.

Where a purchase of a mineral claim was made by a co-tenant of an adjoining claim for the benefit and protection of the latter, his co-tenants cannot be deprived of a right to participate in the purchase because of failure to contribute to the cost thereof, where it appears that no demand had ever been made upon them to contribute thereto, and that, at all times after learning of the purchase, they had been willing and ready to contribute their proportion of the purchase price.

SAME — QUIETING TITLE — DECREE RESTRICTED TO ISSUES.

In an action by the owner of a mining claim to restrain the owners of an adjoining claim, from mining plaintiff's lode which dipped under the claim of defendants, in which a portion of the defendants set up the equitable defense that they were joint owners in the lode because of a purchase made by a co-tenant, such defendants have no right to have title quieted in them to the extent of their interest in the claim worked by them, since the only claim in issue was the one upon whose vein or lode they were charged with trespassing.

Appeal from Superior Court, Spokane County.—Hon. WILLIAM E. RICHARDSON, Judge.    Modified.

*McBride & Folsom,* for plaintiff.

*Merritt J. Gordon* and *Happy & Hindman,* for defendants.

The opinion of the court was delivered by

HADLEY, J.—The plaintiff, the Cedar Canyon Consolidated Mining Company, a corporation, is the owner of a lode mining claim known as the "Elephant" claim, situated in Springdale mining district, in Stevens county, Washington. To the south and east of the Elephant, and adjoining it, is the Legal Tender mining claim, which was located by the defendant W. J. Yarwood. This location was made subsequently to the location of the Elephant claim. At the time of the commencement of this action the said defendant W. J. Yarwood and his co-defendants Eli Yarwood, Ed. Yarwood and David Yarwood, were, and for some time prior thereto had been, the owners of an undivided half interest in the Legal Tender claim, and the Deer Trail Consolidated Mining Company, a corporation, was the owner of the remaining undivided half interest therein. For a considerable time prior to the commencement of this action the Yarwoods and the last-named corporation were in joint possession of the Legal

Tender claim.  Prior to the joint ownership and posses-
sion above mentioned the Yarwoods and the Deer Trail
No. 2 Mining Company, a corporation, jointly owned
and were in possession of the said claim, and while such
joint ownership existed the last-named corporation be-
came the grantor of the Deer Trail Consolidated Mining
Company, and the latter succeeded to the ownership of
said undivided half.  During the period covered by the
said respective joint ownership the owners were jointly
engaged in mining ores from said claim, and shared the
profits and divided the expenses connected therewith.  The
defendant W. J. Yarwood was the superintendent of such
mining operations at the mines.   These operations re-
sulted in a profit approximating $60,000.   While the
Deer Trail No. 2 Mining Company was the owner of said
undivided half interest in the Legal Tender, and while it
was jointly engaged with the Yarwoods in mining ore
within the limits of the Legal Tender claim, that com-
pany, through its president and general manager, Charles
Theis, purchased from divers parties an undivided four-
sevenths interest in the Elephant claim.   In October,
1899, and while the Deer Trail No. 2 Company was joint-
ly engaged with the Yarwoods in mining the Legal Tender
claim, it entered into an agreement in writing with Hogan,
Cole & Wolf, who were then the owners of the remaining
three-sevenths of the Elephant claim, by the terms of
which the plaintiff corporation was to be organized, and in
the agreement it was provided that Hogan, Cole & Wolf
should convey to plaintiff corporation, when organized,
their said three-sevenths interest, and the Deer Trail No.
2 Company was to cause the remaining four-sevenths of
the Elephant to be conveyed to the plaintiff corporation.
In consideration of said respective conveyances, the said
Deer Trail No. 2 Company was to have and receive four-

sevenths of the entire capital stock of the plaintiff company, and the said Hogan, Cole & Wolf were to have and receive the remaining three-sevenths of said capital stock. It was further provided in the agreement that the Deer Trail No. 2 Company should have the right to name a majority of the trustees of the plaintiff corporation, and all of the officers thereof, except the secretary. In pursuance of said written agreement, the plaintiff corporation was organized in the latter part of October, 1899, and, as such corporation, took and received title to the Elephant claim from said Deer Trail No. 2 Mining Company and from Hogan, Cole & Wolf, and thereafter caused the stock of the plaintiff company to be issued in accordance with the said agreement as above outlined. The action was brought in the superior court of Stevens county, but by stipulation was removed to Spokane county, and was tried by the superior court of Spokane county. The said Yarwoods, together with one C. C. May, and the said Deer Trail Consolidated Mining Company, were made defendants in the action. The plaintiff, by its complaint, seeks to recover damages to the extent of $100,000 for ores extracted within the limits of the Legal Tender claim, upon the theory that the vein from which said ores were extracted apexes within the limits of the Elephant claim. The complaint also asks for an injunction to prevent further mining operations on the part of the defendants within the limits of the Legal Tender claim. The defendant the Deer Trail Consolidated Mining Company did not answer the complaint. The defendants Yarwood answered the complaint, and denied that the vein from which they and their co-tenants extracted ores within the limits of the Legal Tender claim had or has its apex within the limits of the Elephant claim, and they also set up an equitable defense to the action, and by way of cross complaint that

a co-tenancy existed between them and the Deer Trail No. 2 Mining Company and the Deer Trail Consolidated Mining Company during the time said ore was being extracted, which co-tenancy included both the joint ownership of said Legal Tender claim and the joint operation of the mine therein while said ores were being extracted. They also charged plaintiff with full knowledge of the existence of such co-tenancy, and with full knowledge, at the time it purchased the interest in the Elephant claim from the co-tenant of the Yarwoods, that such interest had been purchased by their co-tenant at a time when the co-tenancy existed. They therefore claim that plaintiff is estopped to maintain the action, and ask that their title to the undivided half interest in the Legal Tender may be quieted, and they be permitted to share in the four-sevenths interest in the Elephant, which was purchased by their co-tenant, and that their title to one-half thereof, or a two-sevenths interest, be quieted. To said cross complaint of the Yarwoods, the plaintiff company, and the co-defendant Deer Trail Consolidated Mining Company made answer. It being the view of the trial court that the pleadings raised both legal and equitable issues, when the case came on for trial the court proceeded to hear evidence upon the equitable issues, and, without making any findings or decision thereon, but reserving such decision as to the equitable issues, further proceeded to impanel a jury to try the question of trespass, which involved the identity of the vein from which the ores were extracted within the limits of the Legal Tender claim by the defendants Yarwood and their co-tenants. The jury trial resulted in a verdict for the plaintiff. The Yarwoods moved for a new trial, and pending the hearing thereon the court made its findings and conclusions upon the equitable issues. After the findings and conclusions were

made, the Yarwoods moved the court to set aside the verdict upon the further ground that upon the findings and conclusions of the court as to the equitable issues the plaintiff was estopped to prosecute this action, and that no effect could be given to the verdict. This motion was also overruled. The plaintiff and the defendant the Deer Trail Consolidated Mining Company also each moved for a rehearing and new trial upon the equitable issues, which motions were each overruled. The court then proceeded to judgment and decree. The judgment recites the verdict of the jury, wherein they found that plaintiff was entitled to recover $1 damages, and that it is entitled to the possession of the vein or lode outside of the side line of the Elephant claim and between the end lines extended through the Legal Tender claim to its southeast line. It is adjudged that the plaintiff is the owner of the lode or vein of the Elephant claim, said vein having its apex within the side lines of the Elephant claim, as determined by the verdict of the jury. It is further found that said vein passes out of the Elephant surface ground on its dip into and underneath the surface of the Legal Tender claim, and it is adjudged that plaintiff is entitled to recover from the defendants five-sevenths of all that portion of the vein which lies underneath the surface of the Legal Tender, and to the easterly of a plane drawn downward vertically through the westerly end line of the Elephant claim extended southerly in its own direction, and within planes drawn downward vertically through the easterly end line of the Legal Tender claim and the side lines of the same. The location of that portion of the vein of which plaintiff is adjudged to be entitled to recover from defendants an undivided five-sevenths is more particularly shown by the following diagram, which is a copy of the diagram attached to the decree, and

marked "Exhibit A." The location of said portion of the vein is indicated on the diagram by the planes drawn downward vertically through the dotted lines A—B, B—C, C—D, D—A.

It is further adjudged that the defendants Yarwood are entitled to the remaining two-sevenths of that portion of the Elephant vein or lode lying underneath the Legal Tender surface and within the planes above described, but are not entitled to any other portion of the Elephant claim or lode. It is decreed that the title of the plaintiff be quieted to all of the Elephant claim and the lode apexing therein, excepting the part above described as belonging to the Yarwoods, and the defendants are perpetually enjoined from interfering with the possession of plaintiff.

From the decree of the court there are two appeals. The plaintiff appeals from that portion of the decree which determines that the defendants Yarwood are entitled to two-sevenths of the Elephant vein which lies within the limits of the Legal Tender claim, it being the contention of plaintiff that the Yarwoods are not entitled to any portion thereof. The defendants Yarwood have appealed because of the refusal of the court to find and decree that their title shall be quieted to a half interest in the Legal Tender claim, and also to one-half of four-sevenths of the Elephant claim, purchased by their co-tenant. The plaintiff's appeal is prosecuted wholly on the judgment roll and the facts as found by both the court and jury. No exceptions to the findings are urged by the plaintiff, but it is insisted that they do not support that part of the judgment which decrees that the Yarwoods are entitled to two-sevenths of the Elephant lode lying beneath the surface of the Legal Tender claim. By the issues submitted to the jury they were called upon to determine by their verdict whether the vein upon which defendants had been operating within the limits of the Legal Tender has its apex within the limits of the Elephant. The verdict determined that the apex is within the Elephant claim. It is well settled that the holder of a valid mining location within which a vein or lode apexes is the owner of the whole of the vein, and he has the right to follow its dips and angles for the purpose of mining when it dips under and leads without the side lines of his claim as marked and located upon the surface. As a legal proposition, it is unnecessary to further discuss this question, since it is not controverted by the parties here. If, then, the plaintiff is the owner of the claim where the Elephant lode apexes, it is also the owner of that portion of the vein which lies within the limits of the Legal Ten-

der, and is entitled to the possession thereof, unless there
be some equitable reason in favor of the Yarwoods why
plaintiff is not entitled to the whole of it as against them.
From the statement heretofore made it will be remembered
that the Yarwoods, together with their co-tenants, had
for some years been mining from this vein within the
limits of the Legal Tender claim. While the Elephant
location was older than that of the Legal Tender in point
of time, yet it appears that much more work had been
done in the way of developing and mining within the
limits of the latter than within the former claim. We
think the Yarwoods and their co-tenants began and con-
tinued in good faith to operate upon the vein in question,
believing it to belong to the Legal Tender claim. Later
developments upon the Elephant claim, however, satisfied
its owners that the vein upon which the Yarwoods and
their co-tenants were operating was the same vein that
apexed within the Elephant, and thereupon such claim
was asserted. The co-tenancy had been operating for
some years with profitable results, and when this adverse
claim to the ore they were mining was asserted they
feared an interference by way of a suit demanding an
accounting or otherwise. Based upon this fear of inter-
ference, Charles Theis, as president of the Deer Trail
Company, a co-tenant and mining partner of the Yar-
woods, purchased for his company the four-sevenths
interest in the Elephant, as heretofore stated. Concern-
ing this purchase Mr. Theis testified as follows:

"Q. You bought it in order to secure them against
the probabilities of a law suit? A. Yes, sir. It had no
ore of any kind in sight—of any kind that I could find.
. . . . At the time the purchase was made it was made
solely for the purpose of preventing this litigation.
. . . Q. And it was for the purpose of protecting

your Legal Tender interest that you made that investment in the Elephant? A. Yes, sir. . . . Q. Well, you made the investment with the expectation of turning it over to your company? A. Yes, sir. Q. And for the purpose of protecting the company in its Legal Tender investment? A. Yes, sir. Q. That was the purpose, too, for which you acquired the additional interest? A. Yes, sir. Q. The same purpose? Had the same thing in view that you had in view when you acquired the May interest? A. Yes, sir. Q. Namely, to protect the Legal Tender property? A. To protect our interest in the Legal Tender property."

It seems clear, therefore, that the purchase was not made primarily as an independent investment in the Elephant, but for the sole purpose of protecting the operations of the Deer Trail Company and the Yarwoods within the Legal Tender claim from being interrupted by the owners of the Elephant. The Yarwoods contend that the relation of co-tenancy which existed between them and the Deer Trail No. 2 Mining Company was such that any interest in the Elephant claim purchased by said company inures to the joint benefit of the Yarwoods and their cotenants in the Legal Tender. Such is the general rule in relation to purchases made by a tenant in common when made for the benefit and protection of the common property. *Franklin Mining Co. v. O'Brien,* 22 Colo. 129 (43 Pac. 1016, 55 Am. St. Rep. 118); *Mills v. Hart,* 24 Colo. 505 (52 Pac. 680, 65 Am. St. Rep. 241); *Turner v. Sawyer,* 150 U. S. 578 (14 Sup. Ct. 192); *Cecil v. Clark,* 44 W. Va. 659 (30 S. E. 216); *Montague v. Selb,* 106 Ill. 49; *Bracken v. Cooper,* 80 Ill., 221; *Boyd v. Boyd,* 176 Ill. 40 (51 N. E. 782, 68 Am. St. Rep. 169). Plaintiff contends that in legal contemplation no co-tenancy existed here, because there was no valid mineral claim to which a co-tenancy could attach; that the

vein upon which the Yarwoods and their co-tenants were working belonged to the Elephant, and they were therefore simply joint trespassers. It is urged that the purchase of the interest in the Elephant was that of a distinct and independent property, which bore no relation to any common property to which the so-called co-tenants had any lawful claim. It is asserted that no discovery of mineral was made within the Legal Tender at the time the location thereof was made. It appears from the evidence, however, that valuable mineral was at some time discovered within the Legal Tender, and the location being properly marked and location notices being posted and recorded, the claim became, as between the Yarwoods and their co-owners, a valid location. As between themselves and the government, they had title to the property, and were entitled to hold it until some one other than the government could show a better or paramount title. In the absence of intervening rights, the fact that mineral is not discovered on a claim until after the notice of location is posted and the boundary marked is immaterial, and, where the discovery is the result of work subsequently done by the locator, his possessory rights under his location are complete from the date of such discovery. *Nevada Sierra Oil Co. v. Home Oil Co.,* 98 Fed. 673; *Erwin v. Perego,* 35 C. C. A. 482 (93 Fed. 608); *Jupiter Min. Co. v. Bodie Consol. Min. Co.,* 11 Fed. 666; 1 Lindley, Mines, § 335, and cases cited. It follows that the Yarwoods and their co-owners had perfected a valid mining location, which was good as between themselves and the government, unless a third person could show a superior title. It was for the purpose of controlling such superior title in the interest of their common property that the purchase of the interest in the Elephant was made. The common title was assailed. It was believed that another had a better title,

and one of the holders of the common title purchased an outstanding interest in such superior title. Under such circumstances we believe there was a tangible substance to which a co-tenancy would attach, and that the parties sustained to each other the relation of co-tenants. A co-tenant will not be permitted to question the common title upon a contest between him and his co-tenants. *Bornheimer v. Baldwin,* 42 Cal. 27; *Olney v. Sawyer,* 54 Cal. 376; Freeman, Co-Tenancy (2d ed.), § 152. When the Deer Trail Mining Company No. 2 purchased an interest in the Elephant claim, it was not in a position to question the common title of the Legal Tender, and, since the plaintiff company is the successor as grantee of the interest so purchased, it is not in position to assail the common title as a basis for establishing its own right of recovery. It must recover upon the strength of its own title, and we therefore think it is estopped to claim that there was no valid location made on the Legal Tender claim.

Plaintiff urges that it is not bound by the knowledge which some of its incorporators may have had as to the rights of the Yarwoods in the Elephant. The trial court, however, made the following record:

"That the Cedar Canyon Consolidated Mining Company in this action had notice of the co-tenancy existing between the Yarwoods and the Deer Trail No. 2 Mining Company, and succeeded to the interests of the Deer Trail No. 2 Mining Company in and to the Elephant claim with full knowledge of said co-tenancy and of the rights of the Yarwoods thereunder."

Plaintiff did not except to the above, and it must be held that it had full notice of the rights of the Yarwoods.

It is further urged by plaintiff that, even if a co-tenancy did exist, the Yarwoods have lost their right to participate in the purchase by failure to offer to contribute

their proportion of the purchase price within a reasonable time. The four-sevenths interest in the Elephant was acquired at different times, and from different people, but was all acquired while the purchasing company and the Yarwoods were jointly working the deposits within the Legal Tender claim. When Mr. Theis, the president of the purchasing company, advised W. J. Yarwood of the purchase of the first one-fourth interest, Yarwood said to him that at the price paid he "would like to be in on it." Pending this time and the time the other purchases were made, Yarwood was working at the mine and the parties continued to share the profits of their joint enterprise. After the other purchases had been made, and when Yarwood was in the office of Theis in Spokane, he was informed of the other purchases, this being the first time the Yarwoods had known of the other purchases. Yarwood then claimed that the Yarwoods were entitled to a share in the interest purchased. Not until that time had the Yarwoods learned that it was the intention of the purchasing co-tenant to assert an exclusive right to the interest purchased. There was some testimony to the effect that there were joint funds on hand, which it was supposed would be applied to the purchase of the first one-fourth interest, of which purchase the Yarwoods had learned; but, however that may have been, no request or demand was ever made by the co-tenant of the Yarwoods that they should contribute to the purchase price, and they had never refused to contribute.

"But before a co-tenant will be considered to have forfeited his right to participation by his delay, it must appear that he had notice not only of the purchase of the outstanding title by his co-tenant, but also of the exclusive claim set up by the latter. He may reasonably presume that the purchase was made in support of the common title,

and may act upon that presumption, considering the outlay simply as a joint charge to be settled and accounted for as any other necessary expense incurred in protecting the joint estate. The burden is upon the purchasing tenant to show that his co-tenant had notice of the purchase and of the exclusive claim set up by him." 17 Am. & Eng. Enc. Law (2d ed.) pp. 679, 680.

"We concede the correctness of the doctrine announced in *Mandeville v. Solomon,* 39 Cal. 133, and the cases cited therein, that where one tenant in common purchases an outstanding title for the benefit of his co-tenants, the latter must, within a reasonable time, contribute or offer to contribute their proportion of the purchase money. But that principle applies to cases only where the purchasing co-tenant wishes to be paid, and conducts himself accordingly." *Boskowitz v. Davis,* 12 Nev. 446, 468.

"A tenant in common holds a several interest in the lands, which is so far identical with his co-tenants' interest that, in all matters affecting the estate, he will be regarded as acting for them as well as himself. He cannot, therefore, purchase an outstanding adverse title and set it up against his co-tenants, if they are willing to reimburse him, *pro rata,* for the money by him so expended. He will be regarded as holding the title he thus acquires in trust for his co-tenants until the presumption is repelled by their refusal to contribute in payment of his outlays." *Weare v. Van Meter,* 20 Am. Rep. 616, 617.

Upon this subject of willingness and readiness to contribute the court found as follows:

"That the defendants Yarwood have at all times since receiving knowledge of the purchase by the Deer Trail No. 2 Mining Company of said four-sevenths interest in the Elephant claim been willing, and now are willing and ready, to contribute their proportion, namely; one-half of the expense and cost of the purchase price of said four-sevenths interest, but that the said Deer Trail No. 2 Mining Company have heretofore and now refuse to permit

said defendants Yarwood to participate in the benefits arising from the purchase of said four-sevenths interest."

In view of the above finding, and of the evidence as discussed above, we think the Yarwoods did not waive their right to avail themselves of the benefit of the Elephant purchase. Upon payment of one-half of the purchase price and legal interest thereon, either by an accounting between themselves and their co-tenants or otherwise, they are entitled to one-half of the interest pur chased,—that is to say, one-half of four-sevenths, or twosevenths, of the entire Elephant lode, whether lying within the limits of the Legal Tender or of the Elephant,— and, upon such payment being made, their title thereto shall be quieted. It must be taken as settled by the verdict of the jury that the particular vein of ore upon which the co-tenants had been operating within the limits of the Legal Tender is a part of the Elephant lode. That vein of ore is the one real subject of controversy in this action, the purpose of the action under the various issues being to establish the respective rights of the parties therein.

The defendants Yarwood ask that their title may be quieted to a one-half interest in the Legal Tender claim, but, as we conceive the issues, this action in no way assails the Legal Tender claim, except in so far as the Elephant lode, which lies therein, is concerned. If other ore deposits have been discovered to exist within the limits of the Legal Tender, the right of the Legal Tender holders therein is not here in issue. There is, therefore, no occasion for any decree upon that subject. The decree should therefore be confined to the quieting of the title and to the establishment of the respective rights of possession in and to the entire Elephant lode, the respective interests being five-sevenths to the plaintiff company and two-sevenths to the defendants Yarwood.

The cause is remanded, with instructions to the trial court to modify the decree in accordance with this opinion.

REAVIS, C. J., and FULLERTON, WHITE, DUNBAR, MOUNT and ANDERS, JJ., concur.