# Thomas *v.* Caldwell, Admr.

*Action by Administrator to recover from Purchaser of Land Difference between the First and Second Sale of Lands of Intestate's Estate.*

1. *Sale of decedent's lands; liability of purchaser for difference between first and second sales; sufficiency of defense.*—When lands are sold by an administrator under an order of the probate court and the sale is confirmed, and the purchaser fails and refuses to comply with his purchase, and upon a second sale of said land ordered by the court they are sold for a less price than at the original sale, the first purchaser is liable for the difference in the price at the second sale; and the fact that at the time of the sale of the land there was a residence thereon, and that after said sale said residence was destroyed by fire, constitutes no defense to a suit for the recovery of the difference in the price of the two sales; the purchaser being regarded as the owner of the lands from the date of its purchase and bearing the loss, if any accrued, during the time necessarily intervening between the sale and the confirmation thereof.

APPEAL from the Circuit Court of Bullock.
Tried before the Hon. A. A. EVANS.
This action was brought by the appellee, S. J. Cald-

[Thomas v. Caldwell, Admr.]

well, as the administrator of the estate of G. M. Hanson, against the appellant, J. L. Thomas. The appeal is from a judgment in favor of the plaintiff. There is no bill of exceptions in the case, and the assignments of error are based upon the rulings of the trial court in overruling the defendant's demurrer to the complaint and in sustaining plaintiff's demurrer to defendant's plea. The facts of the case as shown by these pleadings are sufficiently shown in the opinion.

R. E. L. COPE and JINKS & BLUE, for appellant. Sales of the character of the one in this case are said by this court, during the interim between the bid and the confirmation and conveyance, to be in *fieri*, to rest in negotiation, until all the statutory proceedings are complied with, purchase money paid, the sale reported and confirmed by the court, and a deed made to the purchaser under the order of the court. Until the execution of such a deed, after compliance with all of the statutory requirements necessarily preceding it, the title to the real estate of an intestate remains in the heirs of the estate.—*Cruikshank v. Luttrell,* 67 Ala. 318; *Howison v. Oakley,* 118 Ala. 215; *Washington v. Bogart,* 119 Ala. 377; Mayfield's Dig. 701, § (K) 18, and authorities there cited.

J. D. NORMAN, *contra.*

HARALSON, J.—When lands are sold by an executor or administrator, under the orders of the probate court, for division among the heirs, as the statute provides may be done (Art. VII, C. 3 of the Code), it is required that the executor or administrator shall within 30 days after the sale, report on oath his proceedings to the court, who must examine the same, and may also examine witnesses in relation thereto, and if, on such examination, the court is satisfied that the sale was not fairly conducted, or that the amount for which the land, or any portion of the same was sold, was greatly less than its real value, the court may vacate such sale, in whole or in part.—Code, §§ 173, 174.

[Thomas v. Caldwell, Admr.]

If the sale is set aside, the court must direct another sale to be made, which must be advertised and conducted in all respects as before.—Code, § 176. The statute does not prescribe, that it shall be made at the risk of the purchaser at the first sale, but this right to resell at his risk is a condition implied by law in every judicial sale, which condition becomes a part of every bid, and is incorporated by law into the contract of every successful bidder, by which he agrees that, in the event he fails to comply with the terms of the purchase, if accepted by the court, the land may be resold at his risk, and he will pay the difference arising on the second sale, together with the expenses of the same.—*Howison v. Oakley,* 118 Ala. 215.

Here, it is shown by plaintiff's complaint, that under a decree for the sale of the lands mentioned, for division among the heirs, the administrator, in compliance with the terms of the decree, sold the same at public sale, on the 4th of April, 1901, and John L. Thomas, the defendant, and appellant, bid the same off at and for the sum of $305; that the administrator reported to the court the proceedings of said sale and the failure and refusal of the defendant to comply with his purchase according to the terms of sale, whereupon it was ordered and decreed that the price bid by the defendant be accepted and that said sale to him be, and the same was ratified and confirmed; and it was further ordered, that on account of defendant's failure and refusal to comply with the terms of his said purchase, by paying the amount bid, that plaintiff, as administrator, should resell said real estate in accordance with the terms of the order and decree of the court authorizing said first sale, which it is averred was done, on the 17th June, 1901, and one Keller bid off the property at and for the sum of $75, which last sale was reported to, accepted and confirmed by the court. This suit was instituted by the administrator to recover of defendant, the difference between the first and second sales, amounting to $230, together with $50, the costs and expenses of the second sale.

[Thomas v. Caldwell, Admr.]

The defendant by pleas admitted that he bid off said property for the sum of $305; that at the time, said lot which was a small one,—50 by 130 feet,—had on it a three-room residence, and the residence made the lot valuable, and constituted substantially the entire consideration which induced defendant to make said bid for it; that said lot was valueless as a residence without said building; that on the .... day of April, 1901, while said residence and lot was still in the possession and control of the plaintiff, and before the bid of defendant for the land had been reported to, accepted or confirmed by the probate court, said residence, without any fault on the part of defendant, was totally destroyed by fire, and the property bid for by him was rendered absolutely valueless as a residence, and could not be delivered to him by the plaintiff; and when plaintiff demanded the amount of his bid, defendant refused to pay the same, for the reason that said residence had been totally destroyed by fire, without fault on his part, and plaintiff could not deliver to defendant the possession of the property struck off to him at the sale; and he denied that he had any notice of the report of said sale to the court.

The real question presented for review is, whether the destruction of the house under the conditions set up in defendant's pleas, presents a good defense to the action. This question is fairly presented on assignments of error, that the court erred in overruling defendant's demurrer to the complaint, and in sustaining plaintiff's demurrers to defendant's pleas.

The question is one not free from difficulty, and has been the subject of conflicting adjudications in the courts.

Mr. Rorer, in treating the subject how judicial sales are to be enforced against purchasers, and laying down some rules applicable thereto, says: "But it is no defense to the rule, or excuse for not perfecting the sale, that the property is injured by fire after closing the biddings, for a loss of the property by fire, between the close of the biddings and acceptance of the bid and confirmation of the sale will not excuse the purchaser from

a compliance. Such loss falls upon him when no other objection can be made."—Rorer on Judicial Sales, § 151; *Vance v. Foster*, 9 Bush. (Ky.) 389.

Our own court, touching the same matter, says: "These sales are not complete,—are *in fieri*,—until confirmation; subject to be vacated by the court, though the confirmation, when made, relates back to the day of sale, and the purchaser's rights then attach. He is regarded as the owner, from the day of his purchase; bearing the loss, if the thing sold perishes, or deteriorates in value, and entitled to any appreciation in value, or accretions to the thing, during the time necessarily intervening between the sale and the confirmation. From the day of purchase, until the decree of confirmation, the purchaser becomes a *quasi* party to the cause in which the decree of sale was rendered, subject, as such, to the decrees and orders the court may render in reference to the sale, its vacation, or confirmation."—*Haralson v. George*, 56 Ala. 297.

It thus appears that this court is in line with the doctrine stated by Rorer, and by the decisions of other courts, holding to the same view, from which we are disinclined to depart.

Affirmed.