**SECURITY INS. CO. OF NEW HAVEN v. DAZEY.**

**No. 5392.**

Circuit Court of Appeals, Seventh Circuit.

July 9, 1935.

Rehearing Denied Sept. 18, 1935.

**538**

A. L. Yantis, of Shelbyville, Ill., and Samuel Levin, of Chicago, Ill., for appellant.

Walter T. Gunn, of Danville, Ill., and R. I. Pugh and U. G. Ward, both of Shelbyville, Ill., for appellee.

Before EVANS, FITZHENRY, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The judgment under review was rendered in an action on a policy of fire insurance issued by appellant to appellee on a dwelling house in Findlay, Ill. The second count of the declaration, which alone was submitted to the jury, charged destruction by fire of the insured dwelling, and the giving to the insurer of prompt written notice of the loss by insured; that the insurer thereupon sent on its adjuster, who began adjustment of the loss, but later stated that the department of the Illinois government having to do with prevention of fires would not then permit the further adjustment, and he did not proceed further to make adjustment; that thereby the insurer waived the policy requirement of submission of proof of loss; and that insured has kept and performed all things in the policy on her part to be performed.

Defendant presented ten special pleas, to all of which demurrers were filed, and sustained as to pleas Nos. 4, 6, 7, 8, and 10. Defendant elected to stand by these pleas, and error is assigned on the sustaining of the demurrers.

Plea No. 4 alleges that, contrary to the terms of the policy, the plaintiff neglected to use all reasonable means to preserve the property at and after the fire. The plea does not state wherein the plaintiff was derelict in this regard—what she failed to do that she should have done, or what she did that she should not have done— and is wholly insufficient.

No. 6 states that plaintiff violated a provision of the policy which specified that it shall be void if the hazard be increased within the control or knowledge of the insured; and that plaintiff permitted divers persons to congregate in the insured building for the purpose of unlawfully gaming therein, and that such persons did, while the policy was in force, so assemble and unlawfully gamble therein, whereby the hazard was increased.

We find nothing in the plea from which it may properly be concluded that the facts alleged increased the hazard over what it was on the date of the policy. Under the plea, a policy containing such a clause would be vitiated if at any time persons played, for any stake, a game of bridge or casino or marbles within the building, although the persons playing might in each case have been the immediate family of the occupant. Nor is it pointed out in what manner the playing of any such games increased the hazard. The plea is entirely too general, and the demurrer was properly sustained.

No. 7 sets up the same provision of the policy as No. 6 respecting the increase of the hazard, and charges that the $7,000 total of insurance on the building which plaintiff held at the time of the loss was, to plaintiff's knowledge, excessively beyond its cash value at the time the policy was issued and at the time of the loss; and that such excessive insurance was an increase in the hazard to the knowledge of plaintiff. For anything to the contrary contained in the plea, the building was insured for the full amount of this $7,000 during the entire period that the policy in question was effective, in which case there was no increase in the hazard since defendant's policy came into force, and this clause of the policy could have had no application. Rossini v. St. Paul Fire & Marine Ins. Co., 182 Cal. 415, 188 P. 564; Brighton v. North River Ins. Co., 106 N. J. Law, 10, 147 A. 481.

No. 8 charges that under the policy the building insured was to be occupied for dwelling purposes only, but that to the knowledge of plaintiff it was used for storage of personal property, whereby the haz-

ard was increased. In most residences portions of it are used for storage of articles of personal property. Closets in dwelling houses are more or less so used, also attics and basements; but ordinarily such use for storage would not even suggest an increase in hazard, nor conflict in any degree with use of the entire building for dwelling purposes. Indeed, this would be quite consistent with, and even necessary for, such use. The plea is deficient in not pointing out facts to indicate that the hazard was greater because of the alleged use, and was greater than when the policy issued.

■ No. 10 charges that the building was to be occupied for dwelling purposes only, but that it was occupied and used for other purposes. But it does not state what these other purposes were. The plea is wanting in essential allegations.

At the close of the evidence the court withdrew from consideration of the jury pleas Nos. 2, 3, 5, and 9, of which all but No. 9 charge, in differing ways, that the plaintiff caused the building to be burned, or conspired with others to have it burned, for the purpose of defrauding the defendant.

■ The withdrawal of these pleas followed the striking out of the testimony given on behalf of defendant by one Spicer, who testified that he was frequently at the building to visit there one Alward who resided therein, and that Alward asked him to help burn the building; and that on the afternoon of the night it burned he went with Alward into the attic and saw Alward carry a pop bottle of kerosene and pour it over three bales of shingles there. Up to the time that Spicer testified no evidence whatever had been adduced that tended to connect plaintiff with the firing of the building. Spicer's conversations with Alward were objected to because not in any manner connected with the plaintiff; but upon defendant's promise to make the connection the evidence was received. When, at the close of Spicer's testimony, the defendant rested its case, it was apparent that Spicer had not, directly or indirectly, circumstantially or otherwise, connected the plaintiff with the firing of the building, or with any conspiracy or project to burn it, or conversations relating thereto. The promised connection between Spicer's testimony and the plaintiff had wholly failed to materialize, and in our judgment the court had no alternative but to withdraw these pleas from the jury and to strike his testimony, save only as to what he testified respecting the presence in the building of some kerosene, a matter to be hereinafter considered.

■ Appellant insists that insured's failure personally to give the company notice of the fire bars her recovery. The day following the fire appellant's agent who had signed and delivered the policy sent the company notice of the loss. As to this appellant contends that the agent's testimony to the effect that he sent such a notice was not the best evidence and was inadmissible. Be this as it may, there was produced in evidence a letter from appellant's manager acknowledging receipt from the agent of notice of claim of loss under the policy. This sufficiently indicates that the agent did send the company notice.

It is contended it does not appear that the agent was acting for the insured in sending the notice; but we believe the fair purport of the record on this subject is that he was acting on behalf of the insured as well as in his capacity as agent of the company. These people had long lived in this small community and were close neighbors. The morning after the fire appellee's brother, at her request, met the agent and talked over the matter of the loss and its adjustment, and from the circumstances we deem it fair to conclude that the notice was given in pursuance of the conversation. No fine line should be or is drawn in such matters. The object of such notice is to enable the company promptly to make such investigation as it may wish. The definite notice it received almost immediately following the fire gave it all the advantage contemplated by notice of the loss; and with these circumstances indicating that the information to the company was given on behalf of all concerned, this contention respecting the notice cannot prevail. Fisher v. Crescent Ins. Co. (C. C.) 33 F. 544; Blunt v. Nat. Fidelity & Casualty Co., 93 Neb. 685, 141 N. W. 1033; Brink v. Hanover Fire Ins. Co., 70 N. Y. 593; Burlington Ins. Co. v. Lowery, 61 Ark. 108, 32 S. W. 383, 54 Am. St. Rep. 196; Massachusetts Protective Ass'n v. Cranford, 137 Miss. 876, 102 So. 171.

■ It is insisted that the failure of appellee to submit to appellant proofs of loss, as required by the policy, should defeat her recovery. Appellee responds that the conduct of appellant indicated that the proofs of loss would not be required and

were waived. The facts whereon the claim of waiver is based were, under proper instructions, submitted to the jury, and we think there was sufficient evidence to support the conclusion thereon, adverse to appellant.

The above-mentioned letter of appellant's manager stated that the matter had been referred to an adjuster, who would give the adjustment attention. It was followed up in a very few days by the appearance of the adjuster at Findlay. The evidence of several witnesses for appellee was that a contractor was engaged in making measurements and figures for computing the loss, and that he, with appellee, met and conferred with the adjuster; and that the contractor stated to the adjuster that the figures were not yet ready, whereupon the adjuster said, in substance, that when the figures were completed he would take them, but that he was not yet ready for them. But it does not appear that the adjuster or anybody else said anything about submitting proofs of loss. The adjuster testified that several times in the conversation he said that appellee must comply with the policy. Just what he had in mind in giving this repeated caution does not appear. If he meant that she must supply proofs of loss, he evidently did not make it clear to this old lady. Besides, the others who undertook to give the entire conversation did not mention the alleged repeated warnings respecting compliance with the policy.

The evidence was that a few days later appellee was urging the agent to have something done about the adjustment and the agent telephoned the adjuster, who replied that the matter was in the hands of the state fire marshal, who was investigating the fire, and that nothing could be done until the fire marshal released the matter, in which case the adjuster would proceed with the adjustment. The state fire marshal had no function respecting the insurance policy, and no power over the adjustment. The adjuster having put forth this fiction as to release by the fire marshal before the adjustment could proceed, appellant should not be heard to urge the absence of proofs of loss which appellee was so justified in believing would not be required, at least until the adjuster notified her further of the outcome of the fire marshal's investigation.

We believe the evidence fairly justifies the conclusion that appellee, after these statements of the adjuster, was warranted in concluding that the furnishing of proofs of loss would not be insisted upon. Fray v. National Fire Ins. Co., 341 Ill. 431, 173 N. E. 479; Mix v. Royal Ins. Co. of Liverpool, 169 Pa. 639, 32 A. 460; Bakhaus v. Caledonian Ins. Co., 112 Md. 676, 77 A. 310. We believe the failure of the adjuster thereafter to advise appellee respecting the asserted investigation by the fire marshal, and to proceed with the adjustment, gives sufficient basis for the conclusion that the company denied liability under the policy, in which case the presenting of proofs of loss would be unnecessary to sustain the action. Royal Ins. Co. v. Martin, 192 U. S. 149, 24 S. Ct. 247, 48 L. Ed. 385; Carson et al. v. Home Fire & Marine Ins. Co., 39 F.(2d) 50 (C. C. A. 5); American Automobile Ins. Co. v. Castle, Roper & Mathews, 48 F.(2d) 523 (C. C. A. 8).

Plea No. 9 alleges that the policy provided it shall be void if there be kept, used, or allowed on the premises petroleum or any of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for lights and kept for sale according to law, but in quantities not exceeding five barrels, provided it be drawn and lamps filled by daylight or at a distance not less than ten feet from artificial light); and that while the policy was in force kerosene was used and allowed on the premises which was not used for lights or kept for sale, nor for any other use permitted by the policy. Spicer's testimony was the only evidence on the subject of kerosene, and striking out his testimony left no evidence to support this plea; but taking at par his fantastic and unlikely story, its effect as to the kerosene is that Alward, about 2:30 p. m., brought to the house a gallon can out of which he filled a pop bottle, and going to the attic poured the contents of the bottle over three bales of shingles. Spicer, at Alward's request, accompanied him to the attic; but Spicer does not admit having had any part in saturating the shingles, nor, indeed, did he testify to having personal knowledge that the substance was kerosene, nor that there was any more in the can than that which was poured into the pop bottle. It does not appear that up to that time he had been informed of Alward's plan to burn the building, save so far as he might have inferred it from the saturating of the shingles with what he assumed was a pop bottle of kerosene.

But he says they and others played cards in the house that evening until about 10:30, and he then went home; and that before he left Alward told him that he, Alward, was going to burn the building that night.

If this testimony were accepted as tending to prove that a pop bottle of kerosene was on the premises that afternoon, we are well assured that under the indicated circumstances this would not be a transgression of the clause of the policy respecting inflammable oils, hereinabove referred to.

The clause is not entirely plain as to kerosene, but assuming it to be directed against the storage, keeping, or using on the premises of kerosene for purposes other than light or for sale, does it apply under the facts of this case?

Bringing a quantity of kerosene into the house for the sole purpose of setting it on fire and burning it would not, in our judgment, fall within the purview of the clause, unless indeed the insured knew of and co-operated in the act. This is not like a case where a tenant, without knowledge of the landlord, was carrying on an unlawful occupation in the building in which inflammable oils or explosives were employed, such as St. Paul Fire & Marine Ins. Co. v. Bachmann, 285 U. S. 112, 52 S. Ct. 270, 76 L. Ed. 648. Under Spicer's story, the purpose of bringing the kerosene into the building was antagonistic to the owner, and with the very purpose of destroying her property, and it was not a *keeping, using,* or *allowing* as contemplated by the clause. See London & L. Fire Ins. Co. v. Fischer, 92 F. 500 (C. C. A. 6); Swift v. Patrons' Androscoggin Mut. Fire Ins. Co., 125 Me. 255, 132 A. 745; Sandersville Oil Mill Co. v. Globe & Rutgers Fire Ins. Co., 32 Ga. App. 722, 124 S. E. 728. If appellant's contention were allowed, any introduction upon the premises of the prohibited articles, however fleeting or temporary, would straightway void the policy and it would not thereafter be effective, although neither insurer nor insured knew anything of the circumstance until after the property was destroyed. Under such a construction, if a *marauder* on mischief bent should bring into the structure powder, kerosene, or other inflammable oil, for the purpose of burning the building, the policy would by this very act be voided. We believe the bare statement of the contention demonstrates its untenability, and are well satisfied that if one bent upon burning the

house he occupies as tenant brings into it, and uses for that purpose, instrumentalities which the policy forbids to be there, such use, unknown or unconsented to by the owner, will not impair the validity of the policy. George v. Mohawk Fire Ins. Co., 236 App. Div. 157, 258 N. Y. S. 87, wherein the facts bearing on this proposition were strikingly like those here.

A question arises respecting the extent of appellee's interest in the insured property. Appellee's amendment to declaration charges that at the time of the making of the policy, and from then until the happening of the alleged loss, she had an interest in the property in fee simple, to an amount in excess of the sum insured by appellant.

The policy as declared on contains a clause to the effect that the policy shall be invalid if the "interest of the insured be other than unconditional and sole ownership."

The status of the amendment as a pleading was not challenged. Neither was any plea presented setting up in defense the clause of the policy respecting the insured's unconditional ownership.

The evidence respecting the ownership is: Appellee's sister died intestate owning this property. Prior to the policy date appellee, by inheritance and purchase, had acquired an undivided 13/16 of the property. A proceeding for partition resulted in a judicial sale of it December 18, 1930, whereat appellee was the purchaser, receiving a master's certificate December 18, 1930, so that on the policy date, January 25, 1931, she owned absolutely 13/16, and at least potentially under the master's certificate the remaining 3/16. Appellant contends that in Illinois a master's certificate confers no title on its holder until the sale is approved by the court, and cites Miller v. Miller, 332 Ill. 177, 163 N. E. 343, wherein it appears that after an unconfirmed master's sale the parties in interest stipulated to dismiss the partition suit, and the decision of the court was to the effect that the purchaser, prior to confirmation of the sale by the court, acquired no interest in the property which would interfere with the dismissal.

While we would be slow to apply such a rule in the case of an insurance policy, we believe that the facts here in no event would justify its application.

The master's deed to appellee was issued July 10, 1931. Presumably the master

in the discharge of his official duty did not issue the deed until after the sale had been confirmed by the court; and, indeed, the master's deed recites confirmation. But the record does not disclose the date of the confirmation. If it occurred within the 38-day interval between issue of policy and the master's certificate, the requirement of entire interest in the insured would, under the rule of the Illinois case, have been met, and for anything in the record to the contrary the confirmation may have preceded the policy date.

Whatever might have been the rights of the parties had the fire occurred before the court had approved the master's sale, we believe that when appellee's potential interest in the 9/16 of the property at the date of the policy ripened into an absolute interest through confirmation of sale and issuance of deed during the policy term, this related back to the time of the sale and could not serve to defeat recovery for a loss occurring after confirmation and issuance of deed. Susquehanna Mutual Fire Ins. Co. v. Staats, 102 Pa. 529; Gaylord et al. v. Lamar Fire Ins. Co., 40 Mo. 13, 93 Am. Dec. 289; Clark v. Whitfield, 218 Ala. 593, 119 So. 631; Gailey v. Ricketts, 123 Ark. 18, 184 S. W. 422; Harris v. Stevens, 84 Okl. 196, 202 P. 1024. See, also, Alliance Ins. Co. v. Enders (C. C. A.) 293 F. 485; Milwaukee Mechanics' Ins. Co. v. B. S. Rhea & Son (C. C. A.) 123 F. 9; Plotner v. National Fire Ins. Co., 118 Kan. 234, 234 P. 959.

Error is alleged in the admission in evidence of a photograph of the house made in 1912 or earlier. The objection to its introduction was that because of the lapse of time it could not truly represent the house as it was at the time of the fire. The value of the property was a prime factor, and its size, contour, and general appearance had material bearing thereon. The contractor who rebuilt and greatly enlarged the house shortly before the photograph was made testified that it represented the house as it was up to the fire. This alone would have warranted the admission. But the court in admitting it instructed the jury that it was admitted not to show the condition of the house, but only to show its form and construction. With this limitation there was surely no error in its reception.

It is contended there is no evidence in the record to indicate that the cash value of the building at time of loss was in excess of $1,800. On behalf of appellee four witnesses testified placing the cash value of the building at that time at from $7,000 to $10,000. One witness testified that it would cost $12,000 to restore the building, and that a fair depreciation would be 1½ per cent. per year. One of these witnesses was appellant's local agent, who on cross-examination admitted that a short time before the fire he signed as an appraiser in the partition proceedings a report stating the value of the house and lot to be $1,800. Appellant offered no evidence of value save this report of the appraisers, which, having been admitted in evidence, was for the consideration of the jury in connection with all the evidence on the subject of value.

The jury was instructed that if finding for plaintiff the verdict should be for that proportion of the cash value as found which the face of the policy sued on bears to the entire amount of insurance ($7,000) —28/70 of the cash value. The jury fixed the damages at $1,478.57 (exclusive of interest), thus indicating the value found to be $4,500. Value was peculiarly for the jury, and no error is apparent which would warrant disturbance of its conclusion thereon.

Appellant's brief sharply criticizes reference in appellee's brief to the case of People v. Alward, 354 Ill. 357, 188 N. E. 425, wherein the court reversed, without remanding, a judgment of conviction of Alward for arson, apparently for burning this house, the reversal being predicated largely upon the extreme improbability of the testimony of Spicer, who was characterized as a felon brought from the penitentiary to testify. The criticism is well taken. That case should have no bearing here, for the record makes no reference to it nor to the revelations therein, save only as on cross-examination herein Spicer testified to his prior conviction for larceny. On this trial neither side called Alward, and no explanation of his absence appears.

We have discussed all the points urged by appellant which in our judgment merit consideration, and upon the whole are satisfied the record discloses no substantial error.

The judgment is affirmed.