# Gulf Red Cedar Company *v.* Crenshaw, *et al.*

### *Bill for an Accounting.*

(Decided May 21, 1914. 65 South. 1010.)

1. *Appeal and Error; Reference; Presumption.*—Where the appeal is from a decree overruling exceptions to the report of the register on matters of account, dependent on the register's conclusion from the evidence, all reasonable presumptions are indulged to support his rulings, and they will not be disturbed unless shown to be clearly wrong, based on erroneous conclusions of law, or illegal evidence, or on manifest error in weighing the testimony.

2. *Same.*—The findings of the register on conflicting evidence will be given the same weight as the finding of the jury, and will not be disturbed on appeal unless so palpably erroneous as would warrant the judge in setting aside the verdict under the same circumstances.

3. *Tenancy in Common; Account; Damages.*—A bill for an accounting between tenants in common does not present a case in which the damages should be assessed as if the parties were trespassers, wholly without right in converting the property; for where a tenant in common receives more than his share of the profits, as by the cutting down and selling of timber, he may not be treated as a tort feasor by his co-tenants, but the remedy of the co-tenant is by an action on account or a bill in equity for an accounting; nor should harsh or excessive damages be awarded for failure to disclose facts necessary to ascertain the real damage.

4. *Same; Damages; Authority of Register.*—Where in an action between tenants in common, a register was appointed by the chan-

[Gulf Red Cedar Company v. Crenshaw, et al.]

cellor to ascertain the value of plaintiff's interests for timber cut and sold, and the register did not make any finding from the evidence as to the amount of timber actually cut and sold by the respondent, the register was not authorized or warranted in estimating damages solely by a comparison of the amount so cut and taken with the amount admitted by respondent to have been cut and taken from the land in the vicinity.

5. *Same; Evidence.*—Where the register made no finding as to the amount of timber actually cut and taken by respondent, the evidence would not support a finding as to the amount of timber respondents had removed, based on a comparison with the amount cut from another tract in the same vicinity.

6. *Same; Burden of Proof.*—On a bill filed by complainant against a co-tenant for an accounting for timber cut and sold, complainant had the burden of showing the amount and value of timber cut and removed by respondent.

7. *Same.*—Where the evidence for plaintiff attempting to establish the amount of damages for timber taken, first by counting and measuring the stumps on the land in questioning and estimating therefrom the timber taken, where the witnesses counted and marked the stumps on more than the land involved, and counted practically all the stumps, whether cut by respondent or during the three times the land had been previously cut over, and by guessing at the size of ramp seen stacked on or near the land, but which was not measured, it was too indefinite, uncertain and speculative to afford any basis for an estimate, much less for a finding as to the amount of timber cut and removed; the register having been appointed to ascertain the value of plaintiff's interest in the timber cut and removed by respondent, but making no finding as to the amount of timber taken.

8. *Same; Book Evidence.*—Where the only evidence which tended with any degree of certainty to show the amount of timber cut by respondents was that contained in the log book of respondent, which book was in no way discredited, such entries were sufficient to charge respondent with the amount of timber there shown to have been taken and removed.

9. *Same; Evidence.*—Where complainant offered no certain definite evidence as to the amount of timber cut and removed, a log book introduced by respondent purporting to show the amount cut and removed, amounted to an admission by respondent that he had removed the amount therein shown.

APPEAL from Butler Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by Louisa Crenshaw and others against the Gulf Red Cedar Company, for an accounting for complainants interest in certain timber cut and sold by respondent. From the decree rendered respondent appeals. Reversed and rendered.

POWELL & HAMILTON and ADDISON L. HOLLADAY, for appellant. Counsel insist that as this is a bill between tenants in common for an accounting, complainant is held to that measure of damages in amount of their interest in the timber actually cut and taken, and that they cannot be held as tort feasors. They further insist that the only evidence in the record furnishing anything like a definite or clear or satisfactory basis upon which to estimate this damage is the log book kept by respondent and introduced in evidence. They insist that the decree should be corrected and made to conform to the amount shown by said log book, and that judgment should be rendered accordingly.

J. M. CHILTON and L. M. LANE, for appellee. There were no uncertainties in plaintiff's evidence.—*W. T. Adams M. Co. v. Southern S. L. Co.,* 56 South. 826; *Biglee F. Co. v. Scott,* 85 South. 56; 8 A. & E. Enc. of Law, 614; *Bufford v. Little,* 159 Ala. 300. The internal evidence, and the time required to haul four million pounds of logs discredits the log book introduced by respondents, beside, the log book was wholly inadmissible. —*Grant v. Cole,* 8 Ala. 517; *L. & N. v. Cassibry,* 109 Ala. 697; *Minniece v. Jeter,* 65 Ala. 225; *Snow Hdw. Co. v. Loveman,* 131 Ala. 222; *First N. Bank v. Chaffin,* 118 Ala. 246; Smith's Leading Cas. 621. The court will take cognizance of the familiar rule that all presumptions are indulged in favor of the finding of the register, and will not disturb them unless palpably erroneous.

MAYFIELD, J.—This is the fifth appeal in this case. See reports of former appeals, 131 Ala. 117, 30 South. 466, 90 Am. St. Rep. 22; 138 Ala. 134, 35 South. 50; 148 Ala. 343, 42 South. 564; 169 Ala. 606, 53 South. 812.

[Gulf Red Cedar Company v. Crenshaw, et al.]

The law and the equities governing this case, save as to a final accounting, were settled on former appeals. The parties are tenants in common of 640 acres of land, comprising the south halves of sections 7 and 8, township 11, range 13, in Butler county. The tract was therefore two miles in length, from east to west, and a half mile in breadth, from north to south. The suit is by the appellees against the appellant, for an accounting as between tenants in common. It is alleged, and the proof shows, that the respondent, appellant here, owned a one-fifth interest in this land, and that complainants (appellees) own the other four-fifths interest. It is alleged, and the proof shows, that the respondent has cut and removed large quantities of cedar timber from the lands in question, and has failed to account to the complainants for their interest therein, thus converting to its sole use the interest of complainants. This appeal is from a final decree adjudging that appellant pay to appellees $29,660.96, such amount being the ascertained value of complainants' interest in the cedar timber used and converted by the respondent.

The sole contention or dispute between the parties on this appeal is the amount and value of the cedar timber removed from the lands in question; all other questions, except such as we shall hereafter refer to, have been either settled by agreement or determined on former appeals.

The decree ordering the reference was in part as follows: "It is further ordered, adjudged, and decreed that this cause be and is hereby referred to the register of this court, who will ascertain and report:

"(a) The amount and value of all cedar timber that was cut and removed by the defendant, the Gulf Red Cedar Company, through its contractors, agents, servants, or employees from the said S. ½ of section 7 and

the S. ½ of section 8, of township 11 and range 13, in Butler county, Ala., between the 18th day of December, 1888, and the 18th day of December, 1898.

"(b) The amount and value of all cedar timber that was cut and removed from said lands by said defendant, the Gulf Red Cedar Company, through its contractors, agents, servants, or employees between the 18th day of December, 1898, and the 6th day of August, 1900.

"(c) In ascertaining the value the register will estimate the value of said cedar timber after the same was cut down, and not as standing timber, but shall make no allowance for the expense of cutting the same.

"(d) The register will ascertain and report the amount due and owing by the defendant, the Gulf Red Cedar Company, as of the date of the reference to each of the complainants for their interests, respectively, in the value of said timber, each of the complainants, except Louisa Crenshaw and Lillian Wagner, being entitled to one-fifth of the ascertained value of all of the timber so cut and removed by the said defendant from said lands from the 18th day of December, 1888, to the 6th day of August, 1900, and the said Louisa Crenshaw and Lillian Wagner being respectively entitled to a one-fifth interest in the value of all the timber so cut and removed by said defendant from said lands from the 18th day of December, 1898, to the 6th day of August, 1900."

The register, in response to this decree, reported as follows: "The register reports that a great deal of evidence was introduced as to the amount and value of the cedar timber cut by the Gulf Red Cedar Company from said lands, all of which he has considered, but from which he finds it difficult to form an accurate estimate of the quantity of cedar timber cut by the defendant from the T. C. Crenshaw lands; that it appears however,

from the evidence, that on the 21st day of January, 1898, G. J. Peagler, Thomas W. Peagler, and Ellen D. Peagler sold and conveyed to the Gulf Red Cedar Company the cedar timber on a tract of land in the vicinity of the said T. C. Crenshaw lands for the sum of $25,000, from which land the defendant admits that it obtained at least 19,000,000 pounds of cedar timber. After a consideration of all the evidence, the register finds that he can more nearly estimate the amount and value of the cedar timber cut by the defendant, Gulf Red Cedar Company, from said lands described in the decree by a comparison between the amount and value of said timber so cut from the T. C. Crenshaw lands with the amount and value of said timber sold by said Peaglers to the defendant company. After making allowances for the cedar timber cut from the T. C. Crenshaw lands before the purchase of the same by the Gulf Red Cedar Company, and confining himself to the cedar timber cut from said Crenshaw lands, the register reports that there was at least as much cedar timber cut and removed by the defendant, Gulf Red Cedar Company, from the Crenshaw lands as was obtained, as aforesaid, by defendant from the said Peagler lands.

"The register further reports that, taking the proven value of said Peagler timber at the sum of $25,000, he finds that the Crenshaw timber was inferior in quality to said Peagler timber to the extent of at least one-fifth. He, therefore, finds and reports the value of the Crenshaw timber to have been as of the date of the filing of the bill in this cause, on the 6th day of August, 1900, to be the sum of $20,000, and, deducting one-fifth share of said amount to which the defendant company is entitled under the decree, the register reports as the amount due the complainants of said sum of $20,000, the sum of $15,000 as of the date of the filing of said bill."

This report was confirmed by decree of the chancellor. The bone of contention is the correctness of the register's report as to the amount of cedar timber taken from the lands by respondent.

On appeal from a decree of the chancellor, overruling exceptions to the report of the register in this case, on matters of account dependent upon the conclusions drawn by the register from the evidence produced before him, all reasonable presumptions are indulged to support his rulings, and they will not be disturbed, unless shown to be clearly wrong. Where the register, in his investigation, has the witnesses present before him, he has advantages, in weighing the testimony which neither the chancellor nor this court can enjoy; and his findings on controverted facts should not be disturbed unless based on erroneous conclusions of law, or on illegal evidence, or unless it is manifest that he erred in weighing the testimony.

Again, it has been said that where the evidence is conflicting the finding of the register has the same weight and effect as the finding of a jury, and will not be disturbed on appeal unless palpably erroneous, or unless it would warrant a judge in setting aside a verdict under similar circumstances.—*Winter v. Banks,* 72 Ala. 409; *Lehman v. Levy,* 69 Ala. 48; *Munden v. Bailey,* 70 Ala. 63; *McKenzie v. Matthews,* 153 Ala. 437, 44 South. 958; *Denman v. Payne,* 152 Ala. 342, 44 South. 635; *O'Kelley v. Clark,* 184 Ala. 391, 63 South. 948.

On account of this rule, the great mass of evidence has been carefully studied and analyzed; and we have reached the conclusion that the finding of the register as to the amount of cedar timber cut from the T. C. Crenshaw lands was incorrect.

This being a bill for an accounting between tenants in common, it is not a case in which the damages should

be assessed as if the parties were trespassers and wholly without right in converting the property. The law in such cases was thus quoted in *Sanders v. Robertson,* 57 Ala. 471: "If a tenant in common receives more than his share of the profits, by *an excessive use of the property,* as by wearing out the land, or by an *improper use of it,* as by cutting down the timber and selling it, he cannot be treated as a tort-feasor, but the remedy of the cotenant is by an action of account, or a bill in equity for an accounting."

Neither do we think this a case in which harsh or excessive damages should be inflicted, because of the commingling of goods, or for the failure to disclose facts necessary to ascertain the real or true damages. We cannot agree with appellees that appellant has willfully or negligently withheld or concealed facts necessary to ascertain the damages. In fact the respondent has produced the only evidence from which the amount of the timber cut and removed can be estimated or ascertained with any degree of certainty. Moreover, it appears to us that the account was kept well and accurately, and that without it neither the register nor this court could ascertain the amount of the damages.

The report of the register states that he found it "difficult to form any accurate estimate" thereof. The report shows that he did not make any finding, from the evidence of the plaintiffs or of the defendant, as to the amount of timber actually cut or taken from the lands in question by the defendant, but that he reached his conclusion upon that fact purely and solely by a *comparison* of the amount so cut and taken, with the amount admitted by the defendant to have been cut and taken from the Peagler lands. This, we think, was unauthorized and unwarranted. There was no evidence which warranted the finding made, as to the amount of timber

taken by defendant from the Crenshaw lands, though there might have been as to the *value* of the timber. There was no basis for the comparison which the register made between the amount of timber taken from the Crenshaw lands by the defendant and that admitted to have been taken from the Peagler lands. The evidence was undisputed that the Crenshaw lands had been three times cut over, before the defendant ever cut cedar therefrom; that all the merchantable square timber had been cut off the lands before the defendant entered same or cut timber therefrom; that there was no cedar timber thereon that could be used as merchantable square timber, when the defendant entered and cut the remainder, which was small and scrubby, and would not square 8 or 10 inches, the larger having been sold, cut, and carried off, before the defendant entered or cut therefrom. The Peagler lands, or parts thereof, were virgin forest, never having been cut over; and the evidence furnishes no basis for instituting the comparison which the register employed, as is shown by his report. The comparison was purely arbitrary on his part, as his report shows. He could just as well have said that the timber taken from the Crenshaw lands was two or three times as much as that taken from the Peagler lands. The evidence no more authorized or justified the finding that there was as much cut from the Crenshaw lands as from the Peagler lands than it authorized or justified the finding that there was twice or three times as much so cut. The register's finding was, of necessity, purely speculative or arbitrary, being unsupported by any tendency of any of the evidence. One of the witnesses, who instituted a comparison between the amounts of timber on the two tracts, did say that there was 10 times as much on the Crenshaw tract as there was on the Peagler tract, but that did not show, nor tend to show, that

the defendant cut as much timber from the Crenshaw tract as it did from the Peagler tract. It is true the register says that he made due allowance for the timber cut from the Crenshaw land before the defendant purchased the timber or cut any thereof, and that he restricted his finding to the timber cut from the land by the defendant; and, so estimating, that he found that there was as much timber cut and removed by the defendant from the Crenshaw lands as there was from the Peagler lands. But there was no evidence to justify any such comparison or finding. While the register calls it a *comparison,* and we have spoken of it as such, it was really charging the defendant with the amount of timber taken from the Peagler lands. The amount taken from the Peagler lands was shown only by the logbook of defendant, without which there were no data from which to make an estimate. And if the logbook was correct as to the Peagler lands, why was it not, as to the T. C. Crenshaw lands?

The plaintiffs' evidence does not even tend to support the finding. It contradicts it in every particular. It shows, comparatively speaking, that there was 10 times more on the Crenshaw lands than there was on the Peagler lands; but this comparative evidence does not tend to show how much the defendant cut or removed from either tract. It relates solely to how much was originally and by nature spread on the two tracts, but not to how much was cut or removed therefrom by the defendant. So there was no evidence to justify or support a finding, by comparison, as to the amount of timber the defendant removed from the two tracts.

The testimony shows without dispute that the Peagler lands, or a part thereof, were of the finest timber lands in the country; while the lands here in question had been three times cut over, and all of the merchant-

able square timber had been removed therefrom before the defendant ever entered thereon. The only timber growing on the Crenshaw lands when this defendant purchased, or entered upon the same was refused timber, scrubby, knotty, and of a very inferior grade; and in all this voluminous record there is no evidence which would justify a register or a court in instituting a comparison between the timber taken by the defendant from the Crenshaw lands and that taken from the Peagler lands. As to the finding in question, the register and the chancellor clearly erred.

The plaintiffs' evidence in this case satisfies us, as it evidently did the register, that it is too speculative, too uncertain, and too much of a mere guess to afford any basis for an estimate, much less a finding by a register or a jury, as to the amount of timber cut or removed by the defendnt from the lands in question. If any theory of the plaintiffs' evidence is true, or if the estimate of any one of the plaintiffs' witnesses of the timber cut and removed is true, the decree in this case should be 10 times what it now is. We do not believe that plaintiffs' counsel will contend that a decree for the amount at which any one of the plaintiffs' witnesses estimated the amount of timber cut and removed by the defendant could or should be rendered. The register's report shows conclusively that he did not rely upon the plaintiffs' evidence as to the amount of timber cut or removed by the defendant from this land. In fact the plaintiffs' evidence is entirely too indefinite and uncertain to afford basis for even an estimate. The plaintiffs attempt to estimate the amount in two modes: First, by counting and measuring the stumps on the land in question, and then estimating the amount of timber taken by the defendant, from these data. The evidence indisputably shows that these data were wholly uncertain and unre-

liable. It is reasonably certain from the evidence that the witnesses counted and measured the stumps on twice the amount of the land involved, and that they counted practically all the cedar stumps they found, whether cut by the defendant or by other persons. It was shown that the lands in question had been three times cut over before the defendant cut any timber therefrom, and that the last man who preceded the defendant in the cutting cut and sawed the stumps left by those who had preceded him, and the defendant may have done the same, that is, may have used the stumps left by those who preceded it. Consequently this method employed by plaintiffs to ascertain the amount of timber cut and removed by the defendant was wholly unreliable, and necessarily so, no matter how accurate the count or the measurement. The other mode by which the plaintiffs attempted to show the amount of timber was in merely guessing at the size of ramp which witnesses saw stacked upon and near the land. This was pure guesswork. The witnesses did not even attempt to measure the ramp, but guessed that it covered six acres, and was of a given height. This method is shown by all the evidence to be wholly unreliable; and as shown by the register's report, it was not considered by him.

The burden of proof was on the plaintiffs to show the amount of timber cut and removed by the defendant, and the value thereof. This they failed to sustain, unless the fact was shown by the defendant's evidence or by its answers to the interrogatories propounded by the plaintiffs which were in the nature of a bill of discovery. It is made certain by the register's report that it was this proof, produced by the defendant, that the register relied and acted upon in making his findings, both as to quantity of timber and as to its value. As we have

shown above, there was no other evidence or reliable data upon which he could act. To have attempted to estimate the amount of timber by the evidence furnished by the plaintiffs' witnesses would have been nothing but wild guesswork, without proper information or data upon which to base the guess.

As we have heretofore shown, however, the register fell into error in attempting to ascertain the amount of timber cut and removed by the defendant from the lands in question *by the amount* it admitted it had cut and removed from the Peagler lands. There was no evidence or data, apparent by this record, which would justify this comparison, or the finding made by the register as to the amount of timber removed by the defendant from the Crenshaw lands. The only evidence to be found in this record which, with any degree of certainty, shows or tends to show the amount of timber cut and removed from the lands in question by the defendant is the evidence shown by defendant's logbook, and other admissions by it touching the subject of the inquiry. This book, we think, is shown to be as near accurate as could be expected under existing cricumstances or from the nature of the business. And we find no evidence in this record to justify us in discrediting it. There is no evidence which we find that shows that the book was made or kept for the purpose of defeating this suit or the plaintiffs' claim for the timber taken from this land. It is possible that it is inaccurate in certain respects; but it is certain that it is the most reliable evidence, the best which the nature of the transactions and this record afford. It certainly amounts to an admission, on the part of the defendant, and justifies a decree for the amount of timber shown by this book to have been taken from the land in question.

It is very true that the very nature of this suit and of the transactions involved renders it difficult, if not impossible, for the plaintiffs to know or prove the amount of timber cut and removed by the defendant from the land in question; but this fact would not justify the register or this court in arbitrarily charging the defendant with a fictitious amount, or in charging it with timber which was cut and removed from the lands long before it had any connection with the land, or even removed any timber therefrom. The defendant is properly chargeable with timber which it removed from the lands in question, or with the plaintiffs' interest therein; but it is not chargeable with timber which others cut and removed from the lands long before it purchased, cut, or removed any timber from the lands.

The decree of the chancellor, in so far as it confirms and adopts the report of the register as to the amount of timber cut and removed by the defendant from the T. C. Crenshaw lands, is erroneous, and is reversed; and a decree will be here rendered, charging the defendant with the amount of timber shown by its logbook, and admitted by defendant to have been removed from the lands in question, plus the $60 worth of timber sold to Martin, which was not shown by the logbook.

The register should have found the amount of timber that was taken from the Crenshaw land as directed, and not the amount that was taken from the Peagler land. There is no evidence to support his finding that there was as much timber cut from the Crenshaw land by the defendant as was cut from the Peagler land. It is evident that the only way the register ascertained the amount of timber cut from the Peagler land was by referring to the logbook of the defendant. He should therefore have found the amount of timber taken from the Crenshaw land to have been 4,131,690 pounds, which

was the amount shown by the logbook, and, estimating its price or value at $1 per thousand pounds, would make the value of the timber taken by the defendant from the Crenshaw land $4,131.69, plus the $60 worth sold to Martin. Interest on this amount should be calculated from the 6th day of August, 1900, per agreement of counsel, which amount should be divided among the complainants in the same ratio as found by the report of the register, and decree will be here rendered for each of the complainants, for such amount so ascertained.

Reversed and rendered. All the Justices concur, except GARDNER, J., not sitting.