173 So.2d 803

John L. TANNER

v.

A. B. CASE.

1 Div. 237.

Supreme Court of Alabama.

April 8, 1965.

M. A. Marsal and Howell, Johnston & Langford, Mobile, for appellant.

Austill, Austill & Austill, Mobile, for appellee.

PER CURIAM.

The original suit (affirmed in the case of Tanner v. Case, 273 Ala. 432, 142 So.2d 688), which ultimately resulted in reference, register's report and decree overruling appellant's exceptions and confirmation of the report from which this appeal was taken, was by appellee against appellant to quiet title to an 80-acre tract and a 40-acre tract of land in Mobile County. The trial court entered an original decree in favor of appellee, whose tracts of land were sold under a void tax sale, and ordered a reference as follows:

"This Court further ORDERS, ADJUDGES and DECREES that the Register of this Court hold a reference to ascertain the dates, amounts and reasonable value of timber cut and removed from the above described real property by the respondent after the date of the filing of the original bill of complaint in this cause on September 1, 1949, further, that the said Register ascertain the interest upon the same at the rate of six (6) per cent per annum from the dates the same was so cut, and further that the Register at said reference ascertain the amount required for the redemption of said lands from said tax sales, by ascertaining the amount paid the State of Alabama for said Tax Deeds with interest thereon at the rate of six (6) per cent per annum and the amount of taxes paid upon said land by the Respondent and his predecessor in title Laura L. Young since said tax sale and the amount of interest thereon at the rate of six (6) per cent per annum and report to the Court the full amount of principal and interest due on each of said Tax Deeds and the full amount of principal and interest due for subsequent ad valorem taxes paid by respondent thereon and the reasonable value of the timber cut and removed from said premises since September 1, 1949, with interest thereon at the rate of six (6) per cent per annum from the respective dates the same was cut."

As a part of the same decree, there appears the following:

"The Court further FINDS that the respondent John L. Tanner claims said land by and through a deed from Laura L. Young and Claude V. Young, her husband, dated August 21, 1944 and recorded June 27, 1945, in Deed Book 377 page 489 of the records in the office of the Judge of Probate of Mobile County, Alabama, and that the said Respondent John L. Tanner cut and removed timber from said lands subsequent to the filing of the original bill of complainant in this cause on September 1, 1949."

Pursuant to the above order a reference was held on January 23, 1963, and a report was made, in part, as follows:

"That the respondent Tanner cut and removed from the lands described in the decree 480 cords of pine timber after the date of September 1st, 1949 and before the date of April 20th, 1960, the reasonable value of which was $5.00 per cord, making the reasonable value of the timber cut and removed between the dates of September 1st, 1949 and April 20th, 1960, to be $2,400.-00; that in the opinion of the Register interest thereon at six per cent per annum should commence to run from April 20th, 1960, the date established by which the timber was shown to have been removed, and interest on said reasonable value hereinabove fixed for the cutting and removing of said timber is fixed at $432.00 through April 20th, 1963, making a grand total of principal and interest thereon through April 20th, 1963 of $2,832.00 for the cutting and removal of said timber."

The register also found the total amount of principal and interest for the tax deeds and the taxes subsequently paid to be $1,340.43, making a difference of $1,491.57, which amount the register ascertained the

respondent, John L. Tanner, owes said A. B. Case, being the difference between the reasonable market value of the timber cut and removed, and interest thereon, and the amount of money paid for said tax deeds and subsequent taxes thereon.

Appellant filed a series of exceptions to the report. The circuit court, in equity, entered a decree overruling the exceptions, confirming the report, and entering a decree in favor of appellee, Mr. Case, and against respondent (appellant), John L. Tanner, in the sum of $1,491.57 with interest from April 20, 1963.

■ The issues raised by exceptions to the register's report, and by the assignments of error made on this appeal, deal solely with the register's findings in regard to the amount of timber cut by appellant from the two tracts (80 and 40 acres) in the suit during the period of time from September 1, 1949 to April 20, 1960. The testimony on the reference was taken ore tenus before the register and is conflicting. The findings of the register under such circumstances has the same weight and effect as the findings of a jury, and will not be disturbed on appeal unless palpably erroneous, or unless it would warrant a judge in setting aside a verdict under similar circumstances. Gulf Red Cedar Co. v. Crenshaw, 188 Ala. 606, 65 So. 1010(2).

■ Because of this rule and the insistencies of error, we have carefully reviewed and studied pertinent evidence appearing in the record and in appellant's and appellee's briefs. We are unwilling to hold that the findings of the register were palpably erroneous. We conclude that the decree of the trial court confirming the report and awarding judgment in favor of appellee should not be disturbed. We briefly advert to some of the evidence which was before the register in making his determination and findings. Some of this testimony was disputed, but the correctness and veracity of the witnesses were addressed to the judgment of the register.

Appellee Case testified about his familiarity with the tracts shortly before September 1, 1949, when the original bill to quiet title was filed, and that the land was heavily timbered, "had poles, paper wood and saw logs on it." After testifying as to his experience in buying and selling timber in Mobile County for at least a year prior to September 1, 1949, he testified that pulp wood was $5.00 per cord, and that the property as a whole (the 120 acres), at a minimum, would cut ten cords to the acre, which would include everything that would cut at that time. He stated that he did not know when the timber was cut after September 1, 1949, at which time the timber was there, but he learned for the first time, about one year and one half before the trial, in 1960 that the timber had been cut. He further testified that in 1960 about one half of the timber was there when he bought it. He testified that he couldn't tell whether it had been cut more than once, but from his knowledge of the growth of timber, "that the growth of timber on there at that time was about half of what it was when I bought it; * * * all of the timber had been cut at least one time and this timber had grown back on it and new timber since it was cut after '49, and in looking at it, the timber that was on there at that time and still on there would average six to seven cords of wood to the acre now."

"Q. Now, how does the timber that is presently on the property, proportion-wise, stand to the timber that was on the property at the time this suit was filed in September of '49?

"A. I would say it's just about half, in other words, there was twice as much in 1949 as there is now."

Mr. W. M. Wright testified before the register as a witness for appellee. He testified that he was on the land in question two or three months prior to suit being filed, and again on August 23, 1949 and later.

"Q. Do you know how much timber was on this 120 acres when you saw it on September 1st, 1949? * * *

"A. Yes, sir. * * * but, if we are going down on flat pulp wood, I would say ten cords or better.

* * * * * *

"Q. Do you know what an average price for cord wood at that time was?

"A. At that time I was selling my timber for $6.00 a cord.

"Q. And, this was when?

"A. Along about 1949 for pulp wood.

"Q. You are talking about pulp wood. And, how much pulp wood was on this property in '49?

"A. Ten cords or better.

"Q. And,—Ten cords or better on the whole 120?

"A. Per acre.

"Q. Per acre. * * *"

The witness further stated that this ten cords or better per acre would include all poles cut into pulp wood.

Witness further testified that maybe two years ago the percentage of timber there then was less than 50% of that in 1949.

Mr. Eugene Frazier testified as a witness for appellee. Witness testified that he cut and hauled paper wood; that he wa. familiar with the property in litigation; that he was on the property with J. B. Johnson and Wallace Turner just after Mr. Case left for Texas in 1949, and that he looked at the timber. He further testified that the 120 acres had a whole lot of timber on it, and that there was an exceptionally good stand, and that it was "better than I was getting at that time."

"Q. Do you have an opinion as to how much, how many cords per acre you could cut off this property at that time?

"A. About ten.

"Q. Have you seen this property since then?

"A. Yes, sir. Went back out there and helped him run his line."

He further stated that he was the chain man in helping Mr. Miller, Mr. Case and Mr. Wright and another fellow in running the line.

"Q. Had the timber been cut at the time you ran the line?

"A. Recently.

"Q. It had recently been cut. Could you tell whether it had been cut more than once since you saw it in 1949?

"A. Yes, sir.

"Q. Had it been cut more than once?

"A. More than once, there was two different kind of stumps there.

"Q. * * * Were there any stumps older than the recent stumps?

"A. Yes, sir.

"Q. Now, when did you run the line?

"A. It has been about three years ago I imagine.

* * * * * *

"Q. How does the timber that was there at the time you ran the lines compare to the timber that was there when you saw it in 1949? Was it more or less?

"A. There's less timber there now than it was then. Whole lots less.

"Q. Have you got an idea, percentage, how much less?

"A. There ain't half as much there now as there was in '49."

Appellant contends on this appeal that we should apply the principle of law approved and enunciated by this court in the case of Kershaw Mining Co. v. Lankford, 213 Ala. 630, 631, 105 So. 896, 897 (3 to 5), wherein we quoted from 17 C.J. 758, as follows:

" ' * * * Where there is evidence as to damage from various causes, as to a portion of which defendant cannot be held responsible, and no evidence as to the portion of the damages resulting from the separate causes, the proof is too uncertain to permit the jury arbitrarily to apportion a part or all of the proved damages to the act for which defendant is responsible.' * * * "

Appellant directs our attention to evidence adduced that there were two bad fires in this area, on the particular lands involved in this suit, and that the fires substantially destroyed a good bit of the timber thereon. He contends, "there was absolutely no evidence offered by any of appellee's witnesses or by appellee himself to show that the difference between the timber claimed to have been on this property at the time suit was filed on September 1, 1949, and the amount of timber claimed to have been on the property in 1960, when appellee and his witnesses returned to the property in question, was due to cutting timber or any other cause. There was no evidence offered to show that it was due to cutting timber by appellant." But the trial court made a finding of fact in its original decree, which was affirmed by this court, that appellant cut and removed timber from said lands subsequent to the filing of the original bill in this cause on September 1, 1949.

Appellant, on direct examination, testified that in the spring of 1947, he caused the marketable timber to be cut, and that in 1949 there was no marketable timber on the land; that in 1949 there was an average stand of timber on the land that was not too thick; that "just prior to that it had started coming back after I cut it, the little stuff was showing up, and then we had a fire and it caused those little ones to die; and, just the ones that were high enough up that the top wouldn't be burnt too bad, it just left a mere stand of timber and, so help me God, on that date I could stand on the hillside next to the road and look straight across, and did, just prior to that, looked and saw one of my cattle in about '48, saw one of my cows down. A white cow where the fire had went over and burned here and I went to her. You could look completely from one side to the other."

"Q. In 1949, was there any marketable timber on there?

"A. There was none. No, sir, none. I say this, when I say 'none' there could have been such things as two or three small trees to a acre, but that is what we call no timber."

Mr. E. E. Johnson testified for appellee. The tendency of his testimony comported with that of appellant, who disclaimed any merchantable timber on the land in 1949.

"Q. Now, assuming, Mr. Johnson, that after 1947, and after you had cut on these three fortys that fire swept through the three fortys, and considering what you had already cut off of it, would there have been any merchantable timber left on those three fortys in 1949?

"A. Not merchantable timber, because it would not have been there if the fire had gone through it or not. The only thing fire could have damaged considerably the small things. But, there just wasn't any merchantable timber there for fire or anything to damage."

Witness Rigby testifying as a witness for appellant, stated that 'there wasn't any timber on the land in 1949, and that a fire swept the land in 1954.

It would unnecessarily prolong this opinion further to summarize or particularize the evidence before the register upon which he based his report. There was before the register a contrariety of evidence adduced by the parties from which the register could find facts or draw conclusions in favor of either party. We are unwilling to say, from our review of this evidence, that the report of the register did not have factual basis, or that it was palpably or clearly wrong. It was up to the register to resolve the conflicts in the evi-

dence, and ferret out the truth from the appearance of the witnesses, their demeanor on the stand, and the reasonableness of their answers. We do not think the testimony about the fires that consumed only small pines on the land was so convincing that the register was unable to find with reasonable certainty the damage from cutting on the part of appellant which appellee sustained after suit was filed.

It is our opinion that the decree of the circuit court from which this appeal is taken should be affirmed. It is so ordered.

The foregoing opinion was prepared by B. W. SIMMONS, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.